**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**JOHN ZOMBOTTI,**

                **Plaintiff,**

        **-v-**                                                  **17-CV-1323V(Sr)**

**NORTH TONAWANDA CITY SCHOOL DISTRICT,**
**MARK RAMPADO,**
**LAURIE BURGER, and**
**JEFF BARKE,**

                **Defendants.**

---

**REPORT, RECOMMENDATION AND ORDER**

This case was referred to the undersigned by the Hon. Lawrence J. Vilardo, in accordance with 28 U.S.C. § 636(b), for all pretrial matters and to hear and report upon dispositive motions. Dkt. #19.

Currently before the Court is a motion to dismiss plaintiff's complaint against defendants Mark Rampado, Laurie Burger and Jeff Barke ("the individual defendants"). Dkt. #16. For the following reasons, it is recommended that the individual defendants' motion to dismiss be granted in part and denied in part.

**BACKGROUND**

Plaintiff was employed by defendant North Tonawanda City School District ("District"), as a custodian from February of 1992 until his termination on October 5, 2017. Dkt. #1, ¶ 11.

Plaintiff was diagnosed with multiple sclerosis ("MS"), in March of 2016. Dkt. #1, ¶ 15.

On May 12, 2016, plaintiff filed FMLA paperwork requesting that he be allowed to work in air conditioned rooms when the temperature rose above 80 degrees because heat and humidity exacerbated plaintiff's MS symptoms. Dkt. #1, ¶¶ 19, 21 & 22. Defendant Rampado, the District's Director of Facilities, refused plaintiff's request and informed plaintiff that his job required him to work in areas without air conditioning. Dkt. #1, ¶¶ 26 & 50. On July 12, 2016, Rampado threatened to send plaintiff to work at Meadow Elementary School, which is not air conditioned. Dkt. #1, ¶¶ 26. Defendant Jeff Barke, the District's Assistant Director of Facilities, was aware of plaintiff's diagnosis and request for accommodation, but did not intervene. Dkt. #1, ¶¶ 12, 14 & 27. Plaintiff chose to use FMLA leave rather than report to Meadow Elementary School. Dkt. #1, ¶ 26.

On August 10, 2016, plaintiff mailed a note to Human Resources from his neurologist explaining that

> MS patients are frequently easily fatigued by extensive heat
> and humidity. Reasonable work accommodations should
> include working in an air conditioned environment for > or =
> to 80% of the time when the outside temp is > 80 degrees.

Dkt. #1, ¶ 28. Plaintiff's neurologist mailed a letter setting forth this information to Laurie Burger, the District's Executive Director of Human Resources and Administrative Services, on August 26, 2016. Dkt. #1, ¶¶ 13 & 29.

On August 30, 2016, a meeting was held to discuss plaintiff's request for accommodation. Dkt. #1, ¶ 30. Despite the recommendation of the District's consulting physician that plaintiff be limited to light duty and a four-hour work day, defendant Burger informed plaintiff that he must return to his relief custodian position full-time, with no light duty accommodation. Dkt. #1, ¶¶ 30-31.

On September 13, 2016, plaintiff was reassigned to second shift, effective October 8, 2016. Dkt. #1, ¶ 32. Plaintiff alleges that first shift was better for his disability because temperatures are generally cooler and less humid in the morning and there are other custodians and individuals working during the day who would be available to assist plaintiff and be aware if he suffered a medical emergency. Dkt. #1, ¶¶ 40-44.

The District posted plaintiff's day shift position on December 5, 2016, but did not allow plaintiff to interview for this position. Dkt. #1, ¶ 36.

Plaintiff alleges the following causes of action: (1) disability discrimination in violation of the Americans with Disability Act ("ADA"); (2) disability discrimination in violation of § 504 of the Rehabilitation Act ("Rehabilitation Act"); (3) retaliation in violation of the ADA; (4) retaliation in violation of the Rehabilitation Act; (5) retaliation in violation of the Family Medical Leave Act ("FMLA"); (6) pursuant to 42 U.S.C. § 1983 against defendant Burger for discrimination and retaliation in violation of the ADA and Rehabilitation Act and retaliation in violation of the FMLA; (7) pursuant to 42 U.S.C. § 1983 against defendant Rampado for discrimination and retaliation in violation of the

ADA and Rehabilitation Act and retaliation in violation of the FMLA; and (8) pursuant to 42 U.S.C. § 1983 against defendant Barke for discrimination and retaliation in violation of the ADA and Rehabilitation Act and retaliation in violation of the FMLA. Dkt. #1. Plaintiff seeks compensatory damages, attorneys' fees, injunctive relief and punitive damages. Dkt. #1, pp.14-15.

## DISCUSSION AND ANALYSIS

### Dismissal Standard

To survive a motion to dismiss pursuant Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *quoting Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Application of this standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Plausibility "depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

A plaintiff is not required to plead specific facts establishing a *prima facie* case of employment discrimination as set forth in *McDonnell Douglas Corp. v. Green*,

411 U.S. 792 (1973). *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). However, the elements of a *prima facie* case provide an outline of what is necessary to render plaintiff's claims plausible and may, therefore, be considered in assessing whether there is sufficient factual matter in the complaint which, if true, provides the defendant with fair notice of plaintiff's claim, and the grounds on which it rests. *Kelly v. New York State Office of Mental Health,* 200 F. Supp.3d 378, 389 (E.D.N.Y. 2016).

**Individual Liability Under the ADA and Rehabilitation Act**

The individual defendants argue that individuals are not subject to suit under the ADA or the Rehabilitation Act. Dkt. #17, pp.4-5.

Plaintiff responds that the individual defendants, acting as agents of the District, discriminated against him and may, therefore, be enjoined. Dkt. #21, pp.4-5.

The individual defendants reply that plaintiff has not made any claim for specific injunctive relief. Dkt. #22, p.3. In any event, the individual defendants argue that any claim for injunctive relief would be redundant, given that plaintiff's ADA and Rehabilitation Act claims against the District are based upon the same underlying facts. Dkt. #22, p.3.

Title VII of the Civil Rights Act defines employer as "a person . . . who has fifteen or more employees . . . and any agent of such a person." 42 U.S.C. § 2000e. The Court of Appeals for the Second Circuit reviewed both the legislative history and

the remedial provisions contained within the statute to determine that Congress intended to limit liability to employer-entities with fifteen or more employees, which was incongruous with individual employee liability. *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313-17 (2d Cir. 1995), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998); *See Lane v. Maryhaven Ctr. of Hope*, 944 F. Supp. 158, 161 (E.D.N.Y. 1996). Thus, the Court of Appeals held that "individual defendants with supervisory control over a plaintiff may not be held personally liable under Title VII." *Tomka,* 66 F.3d at 1313.

Because the statutory definition of employers under Title VII is the same under the ADA, *see* 42 U.S.C. § 12111(5), courts within the Second Circuit have consistently held that there is no individual liability for employment discrimination under the ADA either. *Coddington v. Adelphi Univ.*, 45 F. Supp.2d 211, 214 (E.D.N.Y. 1999). To hold otherwise would create a perverse scheme whereby individuals could be held liable "for disability employment discrimination under the ADA, but not for racial, religious or gender discrimination under Title VII." *Meling v. St. Francis Coll.*, No. 95-CV-3739, 1997 WL 1068681, at *7 (E.D.N.Y. April 1, 1997). Thus, "[i]t is well established that an individual defendant may not be held personally liable under the ADA." *Singh v. New York State Dep't of Taxation & Fin.*, 911 F. Supp.2d 223, 242 (W.D.N.Y. 2012); *See Garibaldi v. Anixter, Inc.*, 407 F Supp.2d 449, 450 (W.D.N.Y. 2006) ("It is well-settled in the Second Circuit that individual employees, including supervisors, cannot be held personally liable for violations of the ADA."). This includes claims of retaliation under the ADA. *Spiegel v. Schulmann*, 604 F.3d 72, 79-80 (2d Cir.

2010) (because the remedies provided in Title VII apply to the anti-retaliation provision of the ADA, individuals cannot be held liable under ADA's retaliation provision).

The Rehabilitation Act incorporates the definition of employers contained within the ADA. 29 U.S.C. § 794(d). As a result, individuals may not be held liable under the Rehabilitation Act for the same reasons they may not be held liable under the ADA. *Romand v. Zimmerman*, 881 F. Supp. 806, 812 (N.D.N.Y. 1995 ("it would appear to be unsound policy to allow claims against persons in their individual capacities under [the ADA and Rehabilitation Act] while not allowing them under Title VII); *See Emmons v. City Univ. of N.Y.,* 715 F. Supp.2d 394, 408 (E.D.N.Y. 2010) (individual defendants are not subject to personal liability as a matter of law under either the ADA or the Rehabilitation Act). This includes claims of retaliation under the Rehabilitation Act. *Gentleman v. State Univ. of N.Y. - Stony Brook*, 16-cv-2012, 2016 WL 6892151, at *13 (E.D.N.Y. Nov. 11, 2016) (no individual liability for retaliation claim under the Rehabilitation Act). Accordingly, it is recommended that the individual defendants' motion to dismiss plaintiff's ADA and Rehabilitation Act claims be granted.

Although plaintiff's complaint does not name the individual defendants in their official capacities, the Court notes that "individuals cannot be named as defendants in ADA or Rehabilitation Act suits in their official or representative capacities." *Maus v. Wappingers Cent. Sch. Dist.*, 688 F. Supp.2d 282, 302 n.10 (S.D.N.Y. 2010) (internal quotation omitted). In any event, since the District is subject to suit under the ADA and Rehabilitation Act, naming the individual defendants in their

official capacity is redundant. *Fox v. State Univ. of N.Y.*, 497 F. Supp.2d 446, 451 (E.D.N.Y. 2007); *Harrison v. Indosuez*, 6 F. Supp.2d 224, 229 (S.D.N.Y. 1998). Finally, the Court notes that plaintiff did not request any specific injunctive relief, and, as plaintiff notes elsewhere in his memorandum of law, injunctive relief is "a moot point here, as Plaintiff is no longer employed by Defendant North Tonawanda City School District." Dkt. #21, p.6.

### Individual Liability under the FMLA

The individual defendants argue that there are no allegations that any of them qualify as an employer within the meaning of the FMLA so as to support liability under the FMLA. Dkt. #17, p.5.

Plaintiff responds that the individual employees are employers as that term is defined by the FMLA. Dkt. #21, p.5 Specifically, plaintiff alleges that defendants "Rampado and Barke were supervisory employees and refused to accommodate Plaintiff; therefore, they were acting either directly or indirectly in the interest of Defendant North Tonawanda City School District" and that defendant "Burger was the Executive Director of Human Resources and acted in the interest of employer North Tonawanda City School District when she denied Plaintiff's accommodation request and forced him to return to work full-time, in direct contradiction to the advice of Plaintiff's medical providers." Dkt. #21, pp.5-6. Thus, plaintiff asserts that "[e]ach Defendant acted directly or indirectly in the interest of the employer, Defendant North Tonawanda City School District, when they participated in the denial of Plaintiff's

accommodation requests, reassigned Plaintiff to second shift, denied Plaintiff his original position when he applied for and bid on it, and awarded Plaintiff's former position to another employee." Dkt. #21, p.6.

The individual defendants reply that these allegations are insufficient to establish that any of the individual defendants fall within the definition of employer for purposes of the FMLA. Dkt. #22, pp.4-5.

"An individual may be held liable under the FMLA only if [he] is an 'employer,' which is defined as encompassing 'any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer.'" *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 422 (2d Cir. 2016), *quoting* 29 U.S.C. § 2611(4)(A)(ii)(I). This definition explicitly provides for individual defendant liability, including supervisory personnel of public agencies. *Wannamaker v. Westport Bd. of Ed.*, 899 F. Supp.2d 193, 201 (D. Ct. 2012); *Smith v. Westchester Cty.*, 769 F. Supp.2d 448, 475 (S.D.N.Y. 2011) ("The most straight forward reading of the text compels the conclusion that a public employee may be held individually liable under the FMLA."); *but see MacIntyre v. Moore*, 6:15-CV-6660, __ F. Supp.3d __, 2018 WL 4691045, at *11 (W.D.N.Y. Sept. 28, 2018) (noting other circuits have reached differing conclusions as to whether a public official may be found individually liable under the FMLA).

Because the FMLA's definition of employer largely tracks the definition of employer set forth in the Fair Labor Standards Act ("FLSA"), courts apply the economic-

reality test used to analyze individual liability under the FLSA to FMLA cases as well. *Graziadio*, 817 F.3d at *422.* The economic-reality tests considers a nonexclusive and overlapping set of factors intended to encompass the totality of circumstances, including whether the individual (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* In the FMLA context, courts have construed this test as asking essentially whether the individual controlled in whole or part plaintiff's rights under the FMLA. *Id.* at 423. In the context of a motion to dismiss, however, plaintiff need only plead that the individual had substantial control over the aspects of employment alleged to have been violated. *Smith*, 769 F. Supp.2d at 476-77.

In the instant case, plaintiff's allegations that defendant Rampado, the District's Director of Facilities, refused to accommodate plaintiff's requests to work in air conditioning and instructed plaintiff to work at Meadow Elementary School, which was not air conditioned (Dkt. #1, ¶ ¶ 25 & 26), plausibly alleges that defendant Rampado exercised sufficient control over his work conditions to qualify as an employer. Plaintiff's allegations that defendant Burger, the District's Executive Director of Human Resources and Administrative Services, rejected the opinion of the District's consulting physician, rejected plaintiff's request for accommodation and informed plaintiff that he must return to his relief custodian position full time, with no light duty accommodation, or face discipline (Dkt. #1, ¶¶ 30 & 31), plausibly alleges that defendant Burger exercised sufficient control over his work schedule and conditions as well as his ability to exercise

his FMLA rights to qualify as an employer. However, the allegation that defendant Barke, the District's Assistant Director of Facilities, failed to intervene when defendant Rampado instructed plaintiff to work at Meadow Elementary School (Dkt. #1, ¶ 27), fails to plausibly allege any indicia of control over plaintiff's work conditions or ability to exercise his FMLA rights. Accordingly, it is recommended that the FMLA retaliation claim proceed against defendants Rampado and Burger, but be dismissed against defendant Barke.

### 42 U.S.C. § 1983

The individual defendants argue that disability discrimination is not actionable under 42 U.S.C. § 1983. Dkt. #17, pp.5-6.

Plaintiff responds that he must be allowed to proceed against the individual defendants for monetary damages because the ADA and Rehabilitation Act do not provide the remedy of money damages against individual defendants. Dkt. #21, p.6.

The individual defendants reply that the remedial scheme of the ADA and Rehabilitation Act are sufficiently comprehensive to preclude liability under 42 U.S.C. § 1983. Dkt. #22, p.7.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) the violation of a right secured by the Constitution and laws of the United

States; and (2) that the deprivation was committed by a person acting under color of state law. *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87-88 (2d Cir. 2015). Thus, § 1983 provides a cause of action for violations of individual rights conferred by federal statutes as well as the Constitution so long as Congress has not expressly precluded recourse to § 1983 in the statute itself or impliedly foreclosed a remedy under § 1983 by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983. *Blessing v. Freestone,* 520 U.S. 329, 340 (1997); *See Middlesex Cty. Sewerage Auth. v. National Sea Clammers Assoc.*, 453 U.S. 1, 20 (1981)("When the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983."). To sustain a § 1983 action, the plaintiff must demonstrate that the federal statute allegedly violated creates an individually enforceable right in the class of beneficiaries to which he belongs, thereby creating a rebuttable presumption that the right is enforceable under § 1983. *City of Rancho Palos Verdes, Cal. v. Abrams*, 544 U.S. 113, 120 (2005). It is then the defendant's burden to defeat the presumption by demonstrating that Congress did not intend § 1983 as a remedy for the right afforded by the federal statute. *Id.*

ADA

Claims brought under the ADA for employment discrimination can only be brought under Title I of the ADA, at least in cases where the employer, including government employers, employs fifteen or more employees. *Mary Jo C. v. New York State & Local Ret. Sys.*, 707 F.3d 144, 167-71 (2d Cir.), *cert. dismissed*, 569 U.S. 1040

(2013). Title I of the ADA incorporates the enforcement provisions of Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 12117. Because Title VII contains its own structure for private enforcement, resort to § 1983 is precluded. See *Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) ("A § 1983 action may not . . . be brought to vindicate rights conferred only by a statute that contains its own structure for private enforcement, such as Title VII." *)*; *Saulpaugh v. Monroe Cmty. Hosp.*, 4 F.3d 134, 143 (2d Cir. 1993) ("A plaintiff cannot use Section 1983 to gain perceived advantages not available to a Title VII claimant."), *cert. denied*, 510 U.S. 1164 (1994).

It follows, therefore, that claims of disability discrimination premised upon the substantive rights provided by the ADA are also not actionable under § 1983. *See Lener v. Hempstead Pub. Schs.,* 55 F. Supp.3d 267, 281 (E.D.N.Y. 2014) (claim of disability discrimination premised upon substantive rights provided by the ADA is not actionable under § 1983); *Fierro v. New York City Dep't of Educ.,* 994 F.Supp.2d 581 (S.D.N.Y. 2014) (dismissing § 1983 constructive discharge based on disability claim because it was based upon the substantive rights provided by the ADA, which contains its own enforcement provision); *EC Ex rel. RC v. County of Suffolk,* 882 F. Supp.2d 323, 355 (E.D.N.Y. 2012) ("ADA has its own right of enforcement and, consequently, an ADA action may not be brought pursuant to 42 U.S.C. § 1983), *aff'd* 514 Fed. App'x 28 (2d Cir. 2013); *Brown v. Research Foundation of SUNY*, No. 08-CV-592, 2009 WL 1504745, at &10 (N.D.N.Y. May 28, 2009)( "Because Title VII, the ADA, and the ADEA contain their own structure for private enforcement, [p]laintiff may not bring a § 1983 claim premised upon the substantive rights provided by these statutes."), *aff'd* 381 Fed.

App'x 119 (2d Cir. 2010). Accordingly, it is recommended that the motion to dismiss the § 1983 claims against the individual defendants based upon violations of the ADA be granted.

Rehabilitation Act

Section 504 of the Rehabilitation Act incorporates the enforcement provisions of Title VI of the Civil Rights Act. *Barnes v. Gorman*, 536 U.S. 181, 185 (2002). Title VI of the Civil Rights Act is also the model for Title IX, which expressly incorporates the same enforcement procedures available under Title VI. *North Haven Bd. of Educ. v. Bell,* 456 U.S. 512, 546 (1982) (dissent); *Cannon v. University of Chicago*, 441 U.S. 677, 694 (1979). Analyzing Title IX, the United States Supreme Court determined that "Congress did not intend Title IX to preclude § 1983 constitutional suits." *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 256 (2009). As a result, the Supreme Court reversed dismissal of plaintiff's claims under 42 U.S.C. § 1983 for violations of Title IX and the Equal Protection Clause of the Fourteenth Amendment. *Id.* at 260. Thus, the Supreme Court reversed the determination of the Court of Appeals for the First Circuit "that the remedial scheme of Title IX is sufficiently comprehensive to demonstrate Congress's intention to preclude the prosecution of counterpart actions against state actors - entities and individuals alike – under section 1983." 504 F.3d 165, 179 (1st Cir. 2007); *See also Bruneau v. South Kortright Cent. Sch. Dist*., 163 F.3d 749, 757 (2d Cir. 1998) (Title IX sufficiently comprehensive to preclude § 1983 claim for violations of that statute), *abrogated by Fitzgerald*, 555 U.S. 246. In reliance upon *Fitzgerald*, Judge Skretny concluded that

> because the remedial scheme under Title IX and Title VI are nearly identical and because the Supreme Court has instructed that a Title IX claim can be vindicated under § 1983, this Court has no trouble concluding that the same analysis applies to Title VI, and by extension the Rehabilitation Act. Applying that analysis leads to the inevitable conclusion that the Rehabilitation Act scheme is not "comprehensive" and does not preclude a parallel § 1983 claim.

*Stahura-Uhl v. Iroquois Cent. Sch. Dist.*, 836 F. Supp.2d 132, 146 (W.D.N.Y. 2011). In reaching this conclusion, Judge Skretny recognized multiple pre-*Fitzgerald* decisions rejecting 42 U.S.C. § 1983 as an enforcement mechanism for Section 504 of the Rehabilitation Act, but was "compelled to find differently considering . . . *Fitzgerald*." *Id.* at 145-46, *citing A.W. v. Jersey City Pub. Schs.,* 486 F.3d 791, 804-06 (3rd Cir. 2007); *Vinson v. Thomas,* 288 F.3d 1145, 1156 (9th Cir. 2002), *cert. denied*, 537 U.S. 2003); *Lollar v. Baker*, 196 F.3d 603, 610 (5th Cir. 1999); *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1011 (8th Cir. 1999), *cert. dismissed*, 529 U.S. 1001 (2000); *Holbrook v. City of Alpharetta*, 112 F.3d 1522, 1531 (11th Cir. 1997). Thus, the motion to dismiss plaintiff's § 1983 claim for violations of Section 504 of the Rehabilitation Act was denied. *Stahura-Uhl*, 836 F. Supp.2d at 146.

Title II of the ADA incorporates the remedial scheme of the Rehabilitation Act which, as set forth above, incorporates the remedial scheme of Title VI of the Civil Rights Act. *Williams v. City of New York*, 121 F. Supp.3d 354, 371 (S.D.N.Y. 2015). Noting that the Supreme Court interprets Title IX consistently with Title VI, and relying upon *Fitzgerald*, the district court in *Williams* determined that

> Because the remedial scheme of Title II of the ADA derives from the same source as the remedial scheme of Title IX,

>the Supreme Court's conclusion that parallel and concurrent § 1983 claims and implied private causes of action are available under Title IX applies with equal force to Title II of the ADA. Accordingly, a plaintiff can bring a cause of action under § 1983 to enforce rights protected by Title II of the ADA.

*Id.*

Recently, in *Freeman v. Rochester Psychiatric Center*, Magistrate Judge Payson addressed this divergence of case law pre- and post-*Fitzgerald* and recommended, in the context of a motion to dismiss, that plaintiff's § 1983 claim for violation of Section 504 of the Rehabilitation Act be permitted to proceed against certain individuals. 16-CV-6668, 2018 WL 4140426, at *9-11 (W.D.N.Y. Aug. 30, 2018). Judge Telesca recognized differing opinions as to whether public officials could be sued in an individual capacity under 42 U.S.C. § 1983 for violations of the Rehabilitation Act, but relied upon the pre- *Fitzgerald* decisions to conclude that "a plaintiff may not maintain a § 1983 action in addition to a Rehabilitation Act cause of action, where, as here, the only deprivation alleged is a violation of the plaintiff's rights created by the Rehabilitation Act." 2018 WL 4519879, at *5-6 (Sept. 24, 2018). This decision is currently on appeal. No. 18-3218.

In light of the divergence of case law and the pending appeal of this issue, and given that it is defendants' burden to establish that Congress foreclosed § 1983 as a remedy for violations of the Rehabilitation Act, it is recommended that the motion to dismiss the § 1983 claims against the individual defendants based upon violations of the Rehabilitation Act be denied.

FMLA

Because the FMLA's remedial provisions are "comprehensive on their face," and it "is apparent from the plain language of the FMLA remedial provisions that Congress intended to exclude other remedies," thereby precluding resort to § 1983, it is recommended that the motion to dismiss the § 1983 claims against the individual defendants based upon violations of the FMLA be granted. Diaz v. Michigan Dep't of Corrs., 703 F.3d 956, 963 (6th Cir. 2013); *See Webb v. County of Trinity*, 734 F. Supp.2d 1018, 1031 (E.D. Cal. 2010); *Hayduk v. City of Johnstown*, 580 F. Supp.2d 429, 480-86 (M.D. Pa. 2008) (collecting cases). Accordingly, it is recommended that the motion to dismiss the § 1983 claims against the individual defendants based upon violations of the FMLA be granted.

**CONCLUSION**

For the foregoing reasons, it is recommended that the individual defendants' motion to dismiss (Dkt. #16), be granted with respect to the ADA claims against the individual defendants; be granted with respect to the FMLA claim against defendant Barke; be granted with respect to the § 1983 claims based upon violations of the ADA and FMLA; be denied with respect to the FMLA claim against defendant Rampado and Burger; and be denied with respect to the § 1983 claims based upon violations of the Rehabilitation Act.

Therefore, it is hereby ORDERED pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 72(b).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order</u>. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." <u>Failure to

comply with the provisions of Rule 72(b) may result in the District Judge's refusal to consider the objection.

The Clerk is hereby directed to send a copy of this Report, Recommendation and Order to the attorneys for the parties.

**SO ORDERED.**

DATED:  Buffalo, New York
October 31, 2018

 s/ H. Kenneth Schroeder, Jr.
**H. KENNETH SCHROEDER, JR.
United States Magistrate Judge**